IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01566-CYC

R.A.[1],

    Plaintiff,

v.

LELAND DUDEK, Acting Commissioner of Social Security,[2]

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Plaintiff R.A. appeals an adverse decision of the Social Security Commissioner ("Commissioner") made through an administrative law judge ("ALJ") that found that she was not disabled. Because the ALJ failed (1) to obtain and consider the opinion of a medical expert on the question of the medical equivalence of the claimant's migraines to the Commissioner's Listing of Impairments and (2) to address a medical opinion he found persuasive that conflicted with the residual functional capacity he articulated, the ALJ's decision must be **REVERSED** and **REMANDED** for further proceedings.

**BACKGROUND**

The plaintiff applied for Social Security disability benefits with the Social Security Administration ("SSA") on June 30, 2021, asserting that she became disabled starting on January

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), this order identifies the plaintiff by initials only.
[2] Leland Dudek has become the Acting Commissioner of Social Security and is automatically substituted as the defendant in this case pursuant to Fed. R. Civ. P. 25(d).

3, 2018, due to fibromyalgia, migraines, an anxiety disorder, PTSD, depression, ADHD, a panic disorder, diverticulitis, sleep apnea, and high cholesterol. ECF No. 12 at 258. The plaintiff also applied for Supplemental Security Income on June 30, 2021. *Id.* at 248-57. Several months later, the SSA denied the plaintiff's applications. *Id.* at 154-72. The plaintiff appealed that decision, *id.* at 173, and three months later, the SSA issued a Notice of Reconsideration noting that although it had considered additional, previously-unavailable records, the plaintiff's "condition [wa]s not severe enough to keep [her] from working." *Id.* at 174-75.

A claimant "dissatisfied with one of the determinations or decisions" she receives from the SSA "may request a hearing" with "an administrative law judge," 20 C.F.R. § 404.929, and the plaintiff did so on May 30, 2023. ECF No. 12 at 180. She received her hearing some five months later. *See id.* at 44-75. At the hearing, the plaintiff amended her alleged disability onset date from January 3, 2018 to May 29, 2020. *Id.* at 21, 53. On January 2, 2024, as to both the application for disability insurance benefits and the application for Supplemental Security Income, the ALJ found that the plaintiff was not disabled under the Social Security Act from May 29, 2020 through the date of the decision. *Id.* at 38.

In doing so, the ALJ followed the SSA's familiar "five-step sequential evaluation process [it] use[s] to decide whether you are disabled." 20 C.F.R. §§ 404.1520(a)(1), 416.920(b). In that framework, the claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). The Commissioner bears the burden of proof at any necessary fifth step. *Id*. at 751.

The first step involves consideration of the applicant's "work activity," if the applicant is "doing substantial gainful activity" the SSA will find that she is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that the plaintiff was not doing substantial gainful activity. ECF No. 12 at 24.

Next, the ALJ "consider[ed] the medical severity of" the plaintiff's "impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Without a severe impairment lasting at least twelve months, the SSA will find that an applicant is not disabled. *Id.* Here, the ALJ found that the plaintiff had the severe impairments of fibromyalgia, migraine headaches, degenerative disc disease of the lumbar spine, obstructive sleep apnea, bilateral carpal tunnel syndrome ("CTS"), bilateral trigger fingers neurocognitive disorder, depressive disorder, anxiety disorder, and obesity. ECF No. 12 at 24. The ALJ concluded that these impairments "significantly limit[ed] the [plaintiff's] ability to perform basic work activities." *Id.* The ALJ found that the plaintiff's bilateral CTS did not technically meet the duration requirement for a severe impairment due to the diagnosis occurring in May 2023 but nonetheless considered the impairment to be severe. *Id.*

"At the third step," the ALJ "also consider[ed] the medical severity of" the plaintiff's "impairment(s)" to see whether they met or equaled, either separately or in combination, the severity of certain listed impairments that would result in a finding that the plaintiff was disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The ALJ found that the plaintiff's impairments did not meet such criteria. ECF No. 12 at 24-28. With respect to the plaintiff's migraines, he specifically found no evidence that they medically equaled a listing. *Id.* at 25.

At the fourth step, the ALJ assessed the plaintiff's "residual functional capacity" ("RFC") — that is, "the most [she] can still do despite [her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) — and her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A conclusion that an applicant "can still do" her "past relevant work" results in a finding that she is "not disabled." *Id.* The ALJ found that the plaintiff had the RFC

3

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six and stand and/or walk for four hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel bilaterally; occasionally be exposed to excessive vibrations and fumes, odors, and/or irritants; never be exposed to unprotected heights or moving and/or dangerous machinery; can be exposed to moderate noise levels; must avoid bright lights (lights in excess of retain[3] [sic] and office-type lighting); is able to perform simple, routine, and repetitive tasks; can have brief and superficial interaction with the public; can have occasional interaction with coworkers; can maintain concentration, persistence, and pace for two-hour segments during the normal workday with normal breaks; can occasionally deal with changes in a routine work setting and occasionally use judgment to make simple work-related decisions.

ECF No. 12 at 28. Having so found, the ALJ considered the evidence and determined that the plaintiff could not perform her past relevant work. *Id*. at 36.

At the fifth step, the ALJ considered the plaintiff's residual functional capacity and her "age, education, and work experience to see if [she could] make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." ECF No. 12 at 37. Relying on the vocational expert's ("VE") testimony at the hearing, the ALJ identified representative occupations including "assembler," "mail sorter," and "storage facility rental clerk" as jobs the plaintiff could perform given the limitations of her RFC that exist in significant numbers in the national economy. *Id.* at 37. The ALJ therefore concluded that the plaintiff was not disabled at step five. *Id.* at 38.

On January 19, 2024, the SSA Office of Appellate Operations granted the plaintiff's request for additional time before any further action would be taken with regard to her claims. ECF No. 12 at 11. The plaintiff submitted a brief to the Appeals Council on February 13, 2024,

---

[3] Presumably, "retail," not "retain."

*id.* at 8-9, but the Appeals Council denied the request for review. *Id.* at 5-9. This timely request for judicial review pursuant to 42 U.S.C. § 405(g) followed, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). ECF No. 11.

## **ANALYSIS**

"[T]he Social Security Act," 42 U.S.C. § 401 *et seq.*, "authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). A benefits claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. *Id.* §§ 423(d)(3), 423(d)(5)(A). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citation omitted). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Alcantar v. Colvin*, 207 F. Supp. 3d 1206, 1209 (D. Colo. 2016) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)).

The primary responsibility for determining eligibility for disability benefits lies with the Commissioner. *See* 42 U.S.C. § 405(a). But an individual may obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a

5

party . . . by a civil action commenced within sixty days after the mailing to him of notice of such decision." *Id.* § 405(g). The scope of such review is limited, as "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Thus, a reviewing court simply determines "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A reviewing court therefore may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

The plaintiff lodges three challenges to the ALJ's decision. First, she challenges the ALJ's step-three analysis of her migraines. ECF No. 13 at 16-19. Second, she argues that the ALJ improperly omitted, without sufficient explanation, limitations in concentration, persistence, and pace from the RFC even though they were present in the ALJ's step-three analysis. *Id*. at 21-24. Finally, she argues that the ALJ failed to explain the RFC's omission of limitations identified in a medical opinion that the ALJ found persuasive. *Id*. at 19-21. The Commissioner adequately defends against the second challenge, but the other two mandate reversal and remand.

<u>Analysis of Migraines</u>

The plaintiff first challenges the ALJ's decision that her migraines were not equivalent to a listing that would render her disabled at step three. ECF No. 13 at 16. She advances several arguments, but her best one arrives belatedly for the first time in her reply brief. Citing *Headley v. Colvin*'s, No. 13-cv-02989-WYD, 2015 WL 1525561, at *3 (D. Colo. Mar. 31, 2015),

6

guidance that "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue," she argues that the ALJ lacked a required expert opinion on the step-three medical equivalence of her migraines. ECF No. 16 at 6-7.

"Typically, arguments raised for the first time in a reply brief are generally deemed waived, and district courts within this Circuit have granted motions to strike such newly raised arguments." *Lieberenz v. Bd. of Cnty. Commissioners of the Cnty. of Saguache*, No. 21-CV-00628-NYW-NRN, 2023 WL 1767260, at *6 (D. Colo. Feb. 3, 2023) (citation and internal quotation marks omitted), *aff'd in part, appeal dismissed in part sub nom. Lieberenz v. Wilson*, No. 23-1055, 2024 WL 2952150 (10th Cir. June 12, 2024). But "the Court retains the discretion to consider portions of a reply while disregarding others." *Id.* Here, the Court considers the plaintiff's argument because the ALJ's decision would have to be remanded in all events, *see infra*, and providing additional guidance on remand may prove more efficient than ignoring the argument on procedural grounds.

At step three, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." Social Security Ruling ("SSR") 96-6P, 1996 WL 374180, at *3 (July 2, 1996). Thus, "[w]hile the ALJ is responsible for deciding the ultimate legal question of whether a listing is met or equaled, the ALJ must receive state agency doctors' judgments on the issue of medical equivalence into the record as expert opinion evidence." *Carbajal v. Astrue*, No. 10-cv-02025-PAB, 2011 WL 2600984, at *2 (D. Colo. June 29, 2011). The ALJ did not do so here. "The requirement that medical equivalence be established by the opinion of a medical expert is satisfied, *inter alia*, by the signature of a State agency

7

medical or psychological consultant on at least one of the forms typically used by the Commissioner to assess disability at the initial stages of the administrative process." *Thomas v. Colvin*, 69 F. Supp. 3d 1174, 1178 (D. Colo. 2014) (citing SSR 96-6P, 1996 WL 374180, at * 3). These State agency medical opinions must address the plaintiff's impairments and whether her "complaints were medically equivalent" to the step-three listings. *Id*. In this case, although two such medical professionals rendered opinions, ECF No. 12 at 621-637, neither addressed whether the plaintiff's migraines were medically equivalent to the listings. "When an ALJ determines that a claimant's impairment or combination of impairments does not meet or medically equates a listing in Appendix I without obtaining a medical opinion on the issue of medical equivalence, the ALJ's step three finding is not supported by substantial evidence and must be reversed." *McCarthy v. Berryhill*, No. 18-cv-02800-CMA, 2020 WL 1482621, at *4 (D. Colo. Mar. 26, 2020). So it is here: the ALJ so determined, but had no medical opinion to guide his determination. The issue therefore requires remand.

The RFC as to Limitations in Concentration, Persistence, and Pace

The plaintiff next challenges the RFC's treatment of moderate limitations regarding concentration, persistence, and pace, contending that although the ALJ found such limitations at step three, ECF No. 12 at 27, he inexplicably omitted them from the RFC. ECF No. 13 at 16-19. But the ALJ sufficiently accounted for those limitations in the RFC.

An ALJ is "under no obligation to include limitations" in mental functioning in a claimant's RFC "based solely on his finding that she had 'moderate difficulties' in" such functioning "as part of the distinct step-three analysis." *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). But once an ALJ "assesse[s] certain mental limitations at steps two and three, the ALJ is required *either* to include corresponding limitations in the RFC assessment or to

8

explain the omission." *D.G. v. Kijakazi*, No. 21-cv-01655-NYW, 2022 WL 2666033, at *8 (D. Colo. July 11, 2022) (internal quotation marks omitted); *see Crowder v. Colvin*, 561 F. App'x 740, 745 (10th Cir. 2014) (explaining that "[i]f the ALJ again chooses to assess moderate impairments in concentration, persistence, and pace at step three, but not to include any limitation on concentration, persistence, and pace in the RFC at step four, he should explain the basis for his decision"). The method of including "corresponding limitations" is not rigid, as "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016). That is what the ALJ did here.

The ALJ, after all, limited the plaintiff's RFC to "simple, routine, and repetitive tasks" and "concentration, persistence, and pace for two-hour segments during the normal workday with normal breaks." *Id*. at 28. He went on to address the plaintiff's concentration, persistence, and pace abilities explicitly. For example, the ALJ considered the plaintiff's "activities of daily living" and explained that she is able to care for her toddler grandson, "has been able to assist her mother in caring for her elderly father," and got "her son into a[n] inpatient rehab out of state." *Id*. at 33. The ALJ explained that these activities were consistent with the RFC's limitation on concentration, persistence, and pace. *Id*. at 33-34.

In addition, the ALJ credited an April 2023 finding from state agency psychological consultant Dr. Karen Ying that although the plaintiff "had mild limitations in understanding, remembering, and applying information, and moderate limitations in each of the other paragraph 'B' criteria," she could "understand simple and detailed instructions" and "sustain simple tasks for 40 hours a week." *Id*. at 35. The ALJ credited Dr. Ying's opinions over that of a different psychological consultant because she "had the opportunity to review more of the medical

9

evidence" and her findings were "generally consistent with" the "examination reports" of two consultative examiners and the "treatment notes" of the plaintiff's treating psychiatrist. *Id*. at 35-36. The ALJ also compared the examinations of two consultative examiners, ultimately crediting the opinion of Dr. Richard Madsen that the plaintiff had "some depression and anxiety but generally normal mental status findings," which was "consistent with the [plaintiff]'s own statements that she has issues with focus, concentration, and anxiety symptoms but is able to care for her niece and grandson." *Id*.

And at the hearing, the ALJ questioned the VE about a worker being off task for portions of the day and about the number of routine work breaks permitted generally during a work day. *Id*. at 73. The ALJ noted that he relied on the testimony of the VE in concluding that the plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id*. at 38. Such a record demonstrates that the ALJ specifically considered the plaintiff's limitation regarding concentration, persistence, and pace and limited her capacity in the RFC in a way that is supported by substantial evidence.

The plaintiff demurs. A two-hour segment limitation, she says, is no limitation at all because it describes someone capable of any job. ECF No. 13 at 24. But "[i]f someone has the basic mental abilities needed for *any job*, it does not mean that they have the abilities necessary for *all jobs*." *K.S. v. O'Malley*, No. 23-CV-002234-NRN, 2024 WL 1973304, at *6 (D. Colo. May 3, 2024). "For example, some jobs presumably require an employee to concentrate for more than two hours at a time, or require employees to take non-standard breaks. Plaintiff would not be eligible for those jobs given her RFC." *Id.* The RFC, then, did account for the plaintiff's moderate limitation in concentration, persistence, and pace.

Dr. Madsen's Opinion on Acceptable Attendance in the Workplace

The plaintiff's final challenge avers that the ALJ improperly failed to explain why he did not adopt Dr. Madsen's limitations regarding the plaintiff's inability to sustain work on a regular and continuing basis in the RFC. ECF No. 13 at 20. This challenge has merit.

An ALJ's decision must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings" in the case record. 20 C.F.R. § 404.1520c(b); 20 C.F.R. § 416.920c(b). In making this determination, the ALJ must consider the following factors: supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c). The ALJ, not any consulting medical professional, is charged with determining the RFC and is not required to defer to any medical opinion. But an ALJ is nevertheless required to explain why a conflicting medical opinion is not adopted. *Harrison v. Comm'r, SSA*, No. 22-4108, 2024 WL 1856553, at *5 (10th Cir. Apr. 29, 2024); *see* SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Here, a conflict remained unexplained.

In Dr. Madsen's April 10, 2023 report, he opined that the plaintiff would have moderate impairments in maintaining acceptable attendance in the workplace and in performing work activities on a consistent basis. ECF No. 12 at 635. The latter opinion presents no conflict, as the RFC's limitation of "two-hour segments during the normal workday with normal breaks" accounts for the plaintiff's difficulties in consistency, as discussed above. *Id.* at 28.

But the ALJ failed to address the former opinion, which does conflict with the RFC. At the hearing, for example, the ALJ asked the VE about unexcused or unscheduled absences. *Id.* at 73. The VE testified that more than one to two unexcused or unscheduled absences over three or four months might be acceptable to an employer, but more than that would eliminate all potential jobs in the national economy, given the other limitations the ALJ included in the RFC. *Id*. Dr. Madsen's moderate limitation on attendance, then, may have impacted the plaintiff's ability to maintain a job in the national economy.

The Commissioner has a different view. Any characterization of Dr. Madsen's opinions as relating to absenteeism, he says, is mere speculation. ECF No. 15 at 18. But given that absenteeism is "[r]epeated absence from work, school, etc. without good reason," *Absenteeism*, Black's Law Dictionary (12th ed. 2024), the potential for an opinion that the plaintiff has "[m]oderate impairment" in "[m]aintaining acceptable attendance in the workplace," ECF No. 12 at 635, to bear on absenteeism hardly seems a stretch.

In short, the ALJ need not credit Dr. Madsen's opinion regarding the plaintiff's workplace attendance impairment, but he must address it. Because the RFC did not account for this potential limitation and the ALJ did not explain how Dr. Madsen's opinion factored into his decision, the case must be remanded for further proceedings.

## **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner, ECF No. 12, is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this opinion, pursuant to 42 U.S.C. § 405(g).

The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th

Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that the plaintiff is or should be found disabled. *See, e.g., Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).

It is further ORDERED that the plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See id.* at 1153.

SO ORDERED this 21st day of March, 2025, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge